**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Judy Jeanette Dvorak,

Plaintiff,

v.

Civ. No. 01-1415 (RHK/AJB)
**MEMORANDUM OPINION AND ORDER**

United States of America,

Defendant.

---

Michael A. Zimmer and Keith J. Kerfeld, Tewksbury, Kerfeld, Zimmer, P.A., Minneapolis, Minnesota, for Plaintiff.

Lonnie F. Bryan, Assistant United States Attorney, Minneapolis, Minnesota, for Defendant.

---

**Introduction**

Plaintiff Judy Jeanette Dvorak is suing the United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1) and 2671 et seq., to recover damages for injuries allegedly sustained as the result of a collision between her vehicle and a United States Postal Service mail truck. Currently before the Court are several pre-trial motions. Dvorak has filed objections to several of the Defendant's proposed exhibits. She has also moved to exclude testimony from Dr. Richard Harding -- whom the United States has identified as its expert witness on the issue of whether the accident caused the injuries about which Dvorak complains -- on the grounds that the United States did not timely disclose Dr. Harding as an expert witness. The United States, for its part, moves

OCT 30 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

pursuant to Rule 702 of the Federal Rules of Evidence to exclude expert testimony by three medical experts who are scheduled to testify for Dvorak: Dr. Monsein, Dr. Lawrentz, and Dr. Weisberg. The United States also moves pursuant to Rule 403 of the Federal Rules of Evidence to exclude the testimony of seven individuals on Dvorak's witness list on the grounds that their testimony will be cumulative. For the reasons set forth below, the Court will sustain most of Dvorak's objections to the exhibits, grant Dvorak's motion in limine with respect to the testimony of Dr. Harding, continue under advisement the United States's motion in limine regarding Dvorak's medical experts, and deny the United States's motion with respect to the lay witnesses.

## I. Dvorak's Objections to Exhibits

Dvorak objects to three categories of exhibits. The first category (Exhibits 6 through 9) includes notes or reports prepared on the day of the accident or shortly thereafter by either Dan Carleen, the supervisor of the driver of the postal truck involved in the accident, or Officer John Fisher, the Saint Louis Park Police officer who arrived at the scene shortly after the accident. The second category (Exhibits 10, 13, 15, and 17) represents the reports prepared by the United States's expert witnesses. The third category (Exhibit 22) is Dvorak's own deposition.

### A. Carleen's Notes and the Police Report

Three of the four exhibits in this category are notes written by Carleen after talking with Dvorak, her mother, Catherine Lambert, the police officer at the scene, and Dvorak's

insurance agent. Dvorak objects to the admission of these notes as containing hearsay.

Carleen's notes present multiple levels of hearsay. The notes themselves are out of court statements by Carleen. See Fed. R. Evid. 801(c). There is insufficient information presently before the Court to support a finding that it is a regular practice of postal service supervisors to make and keep records such as those at issue here. See Fed. R. Evid. 803(6). Accordingly, at present, the Court can find no hearsay exception through which Carleen's notes are admissible.

Furthermore, to the extent Carleen's notes record statements that Lambert, Officer Fisher, Dvorak's insurance agent, or other third persons made to Carleen, those statements present another level of hearsay.[1] Again, there is presently not enough evidence before the Court to establish the applicability of an exception to the hearsay rule for those statements to Carleen. Accordingly, the Court will sustain the objection to Carleen's notes (Exhibits 6 through 8), but will reconsider its ruling upon an adequate showing by the United States at trial that these multiple layers of hearsay fall within an exception to the hearsay rule under Rules 803 or 804.

As for the Traffic Accident Report that Saint Louis Park Police Officer John Fisher prepared on the day of the accident, Dvorak objects that it contains Officer Fisher's conclusions and opinions regarding the accident. The United States has not, however,

---

[1] To the extent Carleen's notes record what Dvorak said to him, however, those statements by Dvorak do not fall within the definition of hearsay because they are admissions of a party opponent. See Fed. R. Evid. 801(d)(2).

qualified Officer Fisher as an expert in accident reconstruction, nor has the United States identified him as an expert witness pursuant to the Federal Rules of Civil Procedure. Dvorak argues that, therefore, the Court should exclude the police report for lack of foundation and as presenting inadmissible opinion testimony. Furthermore, Dvorak contends that the report contains hearsay statements by Mr. Hendrickson, the driver of the postal truck that struck Dvorak's vehicle.[2] The Court reserves ruling on the police report pending a review of the document at trial.

**B. Expert Witness Reports**

Dvorak objects to the admission into evidence of the expert reports of Dr. John Tulloch, Gregory Hanson, Dr. Karen Bruggemeyer, and Dr. Richard Harding on the grounds of hearsay. The reports themselves are out-of-court statements, offered for the truth of the matters asserted therein. Dvorak notes that all of these expert witnesses will present testimony at trial, either live or through deposition. The Court concludes that the expert reports are not admissible and will sustain Dvorak's objection.

**C. Dvorak's Deposition**

Finally, Dvorak objects to the admission of her deposition into evidence. "The deposition of a party . . . may be used by an adverse party for any purpose." Fed. R. Civ. P. 32(a)(2). The United States has not identified, however, the purpose for which it

[2] Again, to the extent Officer Fisher's report records Dvorak's statements to him, those statements do not fall within the definition of hearsay because they are admissions of a party opponent. See Fed. R. Evid. 801(d)(2).

would introduce Dvorak's deposition testimony into evidence. It is the Court's understanding that Dvorak will testify at trial and thus will be available for cross-examination. Accordingly, the Court sees no purpose for her deposition testimony other than for impeachment on cross-examination. The United States clearly can use Dvorak's deposition testimony for impeachment without seeking to have it admitted into evidence. On the information before the Court, and given the Court's preference for live testimony, it will sustain Dvorak's objection regarding her deposition.

## II. Dvorak's Motion to Exclude Testimony of Dr. Harding

Dvorak moves to exclude the expert testimony of Dr. Harding pursuant to Rule 37(c) of the Federal Rules of Civil Procedure on the grounds that the United States disclosed his expert report after the deadlines for doing so had passed.

In response to a joint motion for an extension of deadlines, Magistrate Judge John Mason entered an Amended Scheduling Order on May 28, 2002, setting the close of discovery for September 1, 2002. (Doc. No. 17.) In early August, 2002, the parties returned to court, seeking another extension of the deadlines in this matter. On August 5, 2002, Magistrate Judge Arthur Boylan signed an Order extending the expert disclosure deadline for the United States to September 1, 2002. (Doc. No. 25). Judge Boylan indicated that, in entering his Order, he considered the parties' Stipulation regarding deadlines. (Doc. No. 24.)

On August 20, 2002, Magistrate Judge Boylan denied the parties' joint request for

another extension of the discovery deadlines. The parties, however, agreed between themselves to extend the expert disclosure deadlines. Dvorak contends, and the United States does not deny, that the parties first agreed to extend the expert disclosure deadline until two weeks after Dvorak's deposition. Her deposition was completed on September 13, 2002. According to Dvorak, the United States again asked for an extension of time for expert disclosures, and Dvorak agreed to an extension to October 4, 2002. On October 7, the United States provided Dr. Harding's expert report to Dvorak's counsel.

Even viewing the record regarding expert discovery in the light most favorable to the United States, and regardless of whether one deems Dr. Harding a "medical expert" or not, his expert report is undeniably late.[3] The United States offers no justification for its tardiness in providing Dr. Harding's report to Plaintiff's counsel; indeed, it has not even explained why Dr. Harding's report was late. The first part of Dr. Harding's opinion, regarding the forces involved in the collision, Dvorak's "kinematic response" to the collision, and the likelihood that the accident would cause any injuries to Dvorak were apparently based on a "photograph damage assessment of the vehicles, . . . the repair cost estimates for the Plymouth [that Dvorak was driving], and . . . descriptions of the

---

[3] The United States argues, apparently with a straight face, that providing Dr. Harding's expert report to Dvorak's counsel on October 7 as opposed to October 4 resulted in only a "one day delay." (Def.'s Response to Pl.'s Mot. in Limine Re: Timeliness at 3 n.3.) On any calendar, October 7 is three days after October 4. Although two of those days were a Saturday and a Sunday, it is certainly not uncommon for attorneys, especially those preparing for an imminent trial, to work over the weekend. The government did not miss the deadline by one day; it missed by three days.

scenario." (Harding Report at 3.) Nothing before the Court establishes that this information was unavailable to Dr. Harding until late in the case. Thus, there appears to be no good reason why the United States could not and did not disclose to Dvorak Dr. Harding's opinions that "no mechanism for injury is apparent in this low-energy collision" (id. at 4) and that

> [a]s a consequence of her involvement in the January 26, 1999, motor vehicle collision, Ms. Dvorak would not be expected to sustain any temporary or permanent injury to any part of her body since the event was biomechanically trivial for her. . . . During this event, Ms. Dvorak encountered accelerations no greater than those experienced by her during her activity of normal daily living. (Id. at 12.)

Dvorak contends that she has been prejudiced by the late disclosure of Dr. Harding's report because the United States never indicated that it would use an expert to opine as to the degree of force experienced by Dvorak's vehicle in the collision or Dvorak's "kinematic response" to the collision. Dvorak asserts that all prior discussions between the parties regarding the production of expert reports had involved the medical experts who had performed independent medical examinations on Ms. Dvorak. The United States denies that the extensions of time for expert disclosures, whether granted or denied, limited the extension to medical examinations or medical witnesses. The United States's position is belied, however, by the parties' Stipulation, which Defendant's counsel signed:

> I.
>
> Plaintiff has seen a significant number of *health care providers* both before

> and after the accident. *Acquiring and reviewing these records has been more burdensome than originally expected* by both parties involved
>
> II.
>
> Plaintiff's condition has continued to evolve and the diagnosis, to some degree, has changed. As a result, Plaintiff is still actively treating so as to enable her treating physicians to properly diagnose her medical condition. Dr. Matthew Monsein, one of Plaintiff's treating doctors, of the Sister Kinney Institute is *one doctor that has not been able to complete his medical diagnosis and/or report which needs to be produced to the Defendant* due to continued treatment. It is expected that this will be accomplished within the next thirty (30) days.
>
> III
>
> Plaintiff has completed responses to interrogatories and expects continued supplementation to occur as Plaintiff is still actively treating and attempting to secure compete diagnosis of her medical conditions. Plaintiff's attempts at prompt disclosure have been hampered by ongoing illness and medical complications making it difficult for her to complete discovery.
>
> IV
>
> *Until Plaintiff's medical conditions stabilize[], it is premature for Plaintiff's treating physicians or Defendants independent medical examiners to render opinions*. Plaintiff is still receiving therapy and treatment on a frequent basis. . . . .

(Aug. 3, 2002, Stipulation at 1-2 (emphasis added).) The Stipulation makes no mention of Dvorak's deposition or of Dr. Harding's need for her deposition testimony in order to perform the accident reconstruction analysis found in his expert report. The Court determines that the United States's failure to disclose Dr. Harding's expert report was not "substantially justified" or "harmless" and undue prejudice to Dvorak will result if Dr. Harding is permitted to testify. Accordingly, the Court will grant Dvorak's motion.

## III. The United States's Motion to Exclude Dvorak's Medical Experts

The admissibility of expert testimony and the qualifications of a witness to testify as an expert are preliminary questions that the district court must determine. Fed. R. Evid. 104(a). The proponent of the proposed expert testimony bears the burden of demonstrating by a preponderance of the evidence that it is admissible. See Daubert, 509 U.S. at 592 & n.10; Bourjaily v. U.S., 483 U.S. 171, 175-76 (1987); Lauzon v. Senco Prods. Inc., 270 F.3d 681, 686 (8th Cir. 2001).

Effective December 1, 2000, Rule 702 was amended to add language consistent with the holdings from a line of Supreme Court opinions regarding expert testimony that began with Daubert. As amended, Rule 702 provides that

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, *if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts.*

Fed. R. Evid. 702 (2001) (emphasis added).

Under both Daubert and the amended Rule 702, the trial judge is charged with a "gatekeeper function," the objective of which is to ensure the reliability and relevance of the expert testimony admitted into evidence. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149 (1999). The court ensures the relevance of proposed expert testimony by evaluating whether the opinions offered are sufficiently tied to the facts of the case, see

Daubert, 509 U.S. at 591, and ensures the reliability of such testimony by considering a number of non-exclusive factors, such as "(1) whether the theory or technique can be (and has been) tested, (2) whether the theory has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) whether the theory has been generally accepted." Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 297 (8th Cir.1996) (quoting Daubert, 509 U.S. at 593-94). Other factors pertinent to assessing the reliability of expert testimony include "whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." Lauzon, 270 F.3d at 687.

The ultimate goal of the trial court's "gatekeeping" inquiry is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. To accomplish that "gatekeeper function," the trial court has discretion both in deciding how to evaluate the reliability of the expert testimony and whether the expert's relevant testimony is reliable. Id. In evaluating the admissibility of expert testimony, the district court must also be mindful that "[v]igorous cross-examination [and the] presentation of contrary evidence . . . are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. This last observation reflects the fundamental principle that Rule 702 is generally one of inclusion rather than exclusion.

The United States moves to exclude any opinion testimony from Dvorak's treating physicians regarding whether the physical and mental problems about which Dvorak complains were caused by the January 26, 1999 accident.[4] The Government's argument, in a nutshell, is that the opinions of Dvorak's treating physicians are inadmissible because they rely solely on a faulty premise that if the injuries happened *after* the event, they happened *because of* the event.[5] The testimony of two of these doctors -- Doctors Monsein and Lawrentz – will be presented at trial via deposition. The third expert -- Dr. Mark Weisberg, a clinical health psychologist -- will testify in person.

Dvorak did not submit a memorandum in opposition to this motion in limine, which was filed late.[6] Furthermore, although Dvorak's experts were deposed with respect to their opinions, and although the Government relies on "admissions" made during those depositions to attack the soundness of the experts' opinions, the deposition transcripts are not available to the Court. Accordingly, the Court concludes that, in order to allow Dvorak an adequate opportunity to shoulder her burden as proponent of this expert

---

[4] The United States does not object to the testimony of the treating physicians regarding their care and treatment of Dvorak following the collision. (Def.'s Mot. in Limine at 2 n.3.) Thus, portions of the deposition testimony of Drs. Monsein and Lawrentz are admissible.

[5] In latin, this premise is rendered as "post hoc ergo propter hoc."

[6] The United States did not file its motion until October 22, 2002, one day before responsive briefs to motions in limine were due pursuant to the Court's August 30, 2002, Order regarding the schedule for trial submissions (see Doc. No. 32).

opinion testimony by making an offer of proof regarding the admissibility of her experts' opinions on causation, she will be permitted to prove the admissibility of the testimony at trial. The United States's motion will continue under advisement.

**IV The United States's Motion in Limine Regarding Cumulative Witnesses**

The United States moves to exclude the testimony of seven lay witnesses – family members, friends, and clergy – who propose to testify about "observations of Judy Dvorak's physical and emotional condition before and after the accident." (Def.'s Mot. in Limine Re: Cumulative Witnesses at 1.) The United States objects to this testimony pursuant to Rule 403 on the ground that it is cumulative. The Court determines, however, that each witness brings a different perspective to Dvorak's condition following the accident, having observed her in a variety of settings. Accordingly, the Court that these witnesses will not be entirely repetitive. The United States's motion will be denied.

**Conclusion**

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that

1. Dvorak's Objections to Defendant's Proposed Exhibits are **SUSTAINED IN PART**, the Court reserving ruling on the police report (Exhibit 9) pending a review of the document at trial;

2. Dvorak's Motion to Exclude the Testimony and Evidence of Dr. Harding (Doc. No. 40) is **GRANTED**;

3 The United States's Motion in Limine (Doc. No. 41) is **CONTINUED UNDER ADVISEMENT**; and

4. The United States's Motion in Limine Regarding Cumulative Evidence (Doc. No. 45) is **DENIED**.

Dated: October 30, 2002

RICHARD H. KYLE
United States District Judge