**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Judy Jeanette Dvorak,

Plaintiff,

v.

United States of America,

Defendant.

Civ. No. 01-1415 (RHK/AJB)

**MEMORANDUM OPINION AND ORDER AMENDING THE JUDGMENT**

---

Michael A. Zimmer and Keith J. Kerfeld, Tewksbury, Kerfeld, Zimmer, P.A., Minneapolis, Minnesota, for Plaintiff.

Lonnie F. Bryan, Assistant United States Attorney, Minneapolis, Minnesota, for Defendant.

---

## Introduction

This matter was tried before the undersigned without a jury on October 31 and November 1, 2002. On December 30, 2002, the Court entered a Memorandum Opinion and Order for Judgment awarding Plaintiff Judy Dvorak $316,896.80 plus costs and disbursements. The Court found that the postal service employee who drove the mail truck that struck Dvorak's vehicle was negligent, his negligence was the sole cause of the collision, Dvorak was not negligent in connection with the collision, and the collision was a substantial factor in causing injuries to Dvorak's jaw, neck, and back, and in aggravating and causing psychological injuries.

Presently before the Court is the Defendant United States of America's Post Trial

FILED JAN 3 0 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD JAN 3 0 2003
DEPUTY CLERK

Motion for either an amended judgment or for a new trial, pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure. The Court has received briefing from both the United States and Dvorak and deems the matter submitted. For the reasons set forth below, the Court will grant the Post Trial Motion with respect to the issue of deducting no-fault insurance benefits; in all other respects, the Court will deny the motion.

**Analysis**

The purpose of a Rule 59 motion is to afford relief in extraordinary circumstances. See Dale and Selby Superette & Deli v. United States Dep't of Agric., 838 F. Supp. 1346, 1348 (D. Minn. 1993) (Doty, J.).

> A Rule 59 motion in a nonjury case may be granted when evidence has been admitted or excluded improperly, evidence has been newly discovered, or improper actions of counsel have affected the outcome of the case. However, a motion to amend should not be employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits.

Id. at 1347-48. "On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a).

The United States identifies four grounds for relief under Rule 59. First, the United States complains that the Court failed to articulate the grounds for admitting certain expert evidence despite the United States' motion in limine to exclude such evidence, and improperly received that evidence. Second, the United States argues that

the Court applied an incorrect, heightened, standard of care to the postal driver and/or should have applied the same standard to Dvorak. Third, the United States asserts that the Court erroneously failed to reduce the damages awarded for past medical expenses by the amount of no-fault benefits Dvorak received. Finally, the United States contends that the Court misstated the evidence presented at trial in several respects, and that the evidence is insufficient to sustain a judgment for Dvorak. The Court begins with the issue of expert testimony.

## I. Expert Testimony from Plaintiff's Treating Physicians

Prior to trial, the United States moved to exclude opinion testimony from Dvorak's treating health-care providers on the subject of whether Dvorak's physical and mental problems are caused by the January 26, 1999 accident. Because the Government filed its motion in limine late – one day before the *responsive* briefs to motions in limine were due under the Court's August 30, 2002, Order regarding pre-trial submissions – the Court had not received a responsive brief from Dvorak. The Court took the motion under advisement and permitted Plaintiff's counsel an opportunity to respond. Dvorak submitted a responsive memorandum which the Court reviewed. The motion in limine remained under advisement through the trial.

In the December 30, 2002, Memorandum Opinion and Order for Judgment, the Court did not expressly rule on the United States' motion in limine. The Court did, however, evaluate and discuss the testimony of Doctors Monsein and Lawrenz (presented

through depositions) and of the clinical psychologist, Mark Weisberg (who appeared live during the trial) in its findings of fact and conclusions of law.[1] Implicit in the Court's Memorandum Opinion and Order for Judgment is its determination that the testimony from those treating health-care providers discussed therein satisfied the relevancy and reliability requirements of Rule 702 of the Federal Rules of Evidence.

The United States complains that the Court did not make express findings as to the admissibility of certain testimony from Drs. Monsein, Lawrenz, and Weisberg. None of the cases cited by the Government substantiates its claim that a trial court *must* make written findings of its Daubert analysis prior to admitting proffered expert testimony, nor has the Court found any Eighth Circuit authority imposing such a requirement. To clarify the record, however, the Court hereby expressly denies the United States' motion in limine regarding expert testimony on causation.

As for the merits of the United States' assertion that the Court committed prejudicial error in admitting the testimony from Drs. Monsein, Lawrenz, and Weisberg discussed in the Memorandum Opinion and Order for Judgment, the Court concludes that the United States has not demonstrated that those evidentiary determinations constitute manifest errors of law.

---

[1] As demonstrated by the Court's October 30, 2002 Memorandum Opinion and Order ruling on the parties' other motions in limine, the Court is well aware of the relevant standard for evaluating proposed expert testimony pursuant to Rule 702 of the Federal Rules of Evidence and Daubert and its progeny.

## II. The Standard of Care for the Postal Employee and Comparative Fault

The United States argues that the Court did not apply the same standard of care to both parties and applied a heightened standard of care to the postal employee driving the truck that slid into the side of Dvorak's moving vehicle as she traveled along a through street. In support of this argument, the United States reiterates its position – made clearly in the trial briefs filed both before and after trial – that skidding on ice may occur without fault. The Court addressed this argument, and the question of comparative fault, in its Memorandum Opinion and Order for Judgment and will not revisit the issue. The Government's post-trial motion on this point is not persuasive in either its legal or factual arguments.

## III. The Impact of No-Fault Benefits Paid or Payable

The United States' argument regarding the need, as a matter of law, to reduce the damages awarded to Dvorak is, in its entirety, as follows:

> Past health care expenses were awarded to Plaintiff without a reduction for economic loss benefits paid or payable. MOOJ at 23-24. Minn. Stat. § 65B.51 provides, "the court shall deduct from any recovery the value of basic or optional economic loss benefits paid or payable, . . . ." Here, Plaintiff received the maximum amount of economic loss benefits, $20,000, which should be deducted from the award of $70,905.80. In response to a new trial motion, the Court can correct this error.

Nowhere in the Government's trial briefs – submitted either prior to or after trial – did it reference section 65B.51 of the Minnesota Statutes or mention that some adjustment to Dvorak's claimed damages for past health care expenses would have to be made due to

her receipt of "economic loss benefits." The United States raised this issue for the first time in its Rule 59 motion. Furthermore, the United States cites no exhibit or trial testimony that substantiates whether Dvorak received "economic loss benefits," let alone the amount of those benefits. Where the issue was never briefed to the Court prior to the entry of judgment, and no factual basis was developed at trial, the Court sincerely doubts whether a failure to deduct from Dvorak's past medical expense damages the amount of no-fault benefits received can constitute a "manifest error."

Turning to the merits of the issue, section 65B.51 of the Minnesota Statutes provides in relevant part that

> [w]ith respect to a cause of action in negligence accruing as a result of injury arising out of the operation, ownership, maintenance or use of a motor vehicle with respect to which security has been provided as required by sections 65B.41 to 65B.71, the court shall deduct from any recovery the value of basic or optional economic loss benefits paid or payable, or which would be payable but for any applicable deductible.

Minn. Stat. § 65B.51, subd. 1. "The offset provision of section 65B.51 was specifically designed to prevent double recovery when the claimant's injuries arise out of an automobile accident." Bartel v. New Haven Township, 323 N.W.2d 806, 809 (Minn. 1982). Dvorak's no-fault insurer was not a party to the above-captioned litigation and has apparently asserted no claim for subrogation against Dvorak.

The Minnesota Supreme Court has considered the timeliness of a motion to deduct no-fault insurance benefits from a damages award pursuant to Minn. Stat. § 65B.51. The court observed that "while the general provisions of Minn. Stat. § 548.36 suggest the

filing of a motion requesting a determination of collateral sources within 10 days of the date of entry of the verdict, the statute more specific to this problem, Minn. Stat. § 65B.51, subd. 1, is silent as to any time limitation, but mandates the offset." Wertish v. Salvhus, 558 N.W.2d 258, 258 (Minn. 1997). The supreme court found it unnecessary to resolve the apparent tension between the two statutes because the defendant's request, made in a motion for an amended judgment or new trial, was timely under the ten-day time period of section 548.36. Here, the United States brought its Rule 59 Post-Trial Motion within the time allowed by Federal Rule of Civil Procedure 6(a) and Local Rule 1.1(f). The Court concludes that the United States' request for a deduction pursuant to Minn. Stat. § 65B.51, made within its Rule 59 motion, is similarly timely.

The question that remains is the appropriate amount of the deduction for no-fault benefits received.

> Where the no-fault medical expense benefits paid to the victim of an automobile accident exceed those found reasonably necessary by the jury, the victim's recovery should be reduced by only the amount found reasonable by the jury. Reducing the victim's recovery by the amount of medical benefits actually received would invade the jury award for other uncompensated items of damage.

Fahy v. Templin, 361 N.W.2d 158, 160 (Minn. Ct. App. 1985). The United States has presented no evidence to substantiate the amount to be deducted. Dvorak has filed an attorney affidavit averring that Farmers Insurance Company, Dvorak's no-fault insurer, paid medical expense benefits for medical treatment in the total amount of $20,000. That figure includes $3,004.90 paid for QEEG treatments by Dr. John Nash at Behavioral

Medicine Association. In its Memorandum Opinion and Order for Judgment, however, the Court concluded that Dvorak failed to establish that QEEG is a medically accepted treatment methodology and, therefore, did not award damages to compensate Dvorak for that treatment. Because the Court did not award Dvorak any damages for the cost of the QEEG treatments, there can be no problem of double recovery for those treatments. The Court therefore excludes the $3,004.90 from consideration and will deduct the sum of $16,995.10 from the award of past health care expenses. Accordingly, the Court orders that the Judgment be amended, reduced to $299,901.70, plus costs and disbursements.

## IV. The Sufficiency of the Evidence Presented at Trial

In its Rule 59 motion, the Government has identified six instances from the Memorandum Opinion and Order for Judgment in which the Court allegedly erred in stating what the evidence at trial showed. The Court has considered each of these alleged errors and finds the Government's arguments unpersuasive. The Court concludes that no mistakes of fact warrant a new trial or further amendment of the Judgment.

## Conclusion

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that

1. The United States' Motion in Limine (Doc. No. 41) is **DENIED**; and

2. The United States' Post Trial Motion (Doc. No. 55) is **GRANTED IN PART**. The Clerk of Court is hereby directed to **AMEND** the Judgment by reducing the

amount awarded to Plaintiff Judy Dvorak to $299,901.70, plus costs and disbursements.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 30, 2003

RICHARD H. KYLE
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*